IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MARVEL JONES,

Plaintiff,

vs.

MICHAEL GETTMAN and ROBERT
ROSE, in their individual capacities,

Defendants.

8:23-CV-182

MEMORANDUM AND ORDER

The *pro se* plaintiff, Marvel Jones, is suing the defendants, Michael Gettman, a social worker and therapist at the Norfolk Regional Center (NRC), and Robert Rose, a now-retired sergeant with the Nebraska State Patrol, under 42 U.S.C. § 1983 for malicious prosecution, and under 42 U.S.C. § 1985 for conspiracy to deprive him of his civil rights. This matter comes before the Court on the defendants' motion for summary judgment, filing 101, and Jones's second motion for reconsideration, filing 116.

## I. BACKGROUND

Jones is a patient at the NRC. In December 2020, he was charged with "theft by deception" in Madison County. Filing 1 at 7.[1] Jones allegedly defrauded a fellow patient at the NRC, Timothy Carroll (formerly Timothy Wiley). The charges stemmed from an investigation by Sergeant Rose,

---

[1] Jones attached various documents related to his 2020 criminal charge to his complaint, filing 1. The Court will take judicial notice of those criminal proceedings against Jones. *See Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996). Jones did not respond to the defendants' statement of undisputed material facts, filing 104. Those facts are deemed admitted for the purpose of the present motion. *See* NECivR 56.1(b)(3).

undertaken after the NRC sent the Nebraska State Patrol an email in July 2020 containing a written statement from Carroll:

> April 2019 Marvel asked me to send him money by cashier's check to his sister . . . . The amount was 5 grand. Today at 11:00am he gave me clarification on his true intentions. He never was going to pay me back. He extorted me by providing legal advice and never really actually doing anything.
>
> I want to press charges on both him and his sister.

Filing 103-4 at 79.

A few months after the NRC sent Carroll's statement to the Nebraska State Patrol, Sergeant Rose interviewed Carroll. *See* filing 103-3 at 19. The interview lasted around half an hour. *See* filing 103-4 at 29. Rose did not interview Jones, but he did interview Jones's sister, who verified that Carroll sent her $5,000 for Jones to use. According to Rose, he did not speak to anyone else about Jones's prosecution, in the Madison County Attorney's office or otherwise. *See* filing 103-3 at 16-17.

Rose did not arrest Jones. He turned in his report, and testified in a deposition for this case that he was "surprised" that the criminal charge was filed against Jones. Filing 103-3 at 25. Jones's criminal case was dismissed after Carroll, in a deposition taken by Jones's defense attorney, said that he had been coerced by defendants Gettman and Rose to accuse Jones of fraud. *See* filing 1 at 10, 13, 20, 57. This lawsuit followed.

For this litigation, Jones deposed Carroll again. Carroll said that in April 2019, he sought out Jones for legal help, because Jones was working on his own legal case. Jones told Carroll what resources in the NRC could help him. *See*

2

filing 103-4 at 10. Carroll testified that he offered to give $5,000 to Jones, and he sent the money to Jones's sister. Carroll inconsistently characterized the payment as something to "help" Jones out, and as a "loan" for which Carroll expected to be repaid. *Compare* filing 103-4 at 13, *with* filing 103-4 at 15. According to Carroll, Jones promised to pay Carroll back twice as much after Jones won his legal cases. Filing 103-4 at 15.

According to Carroll, Gettman found out about the payment and began pressuring Carroll to report Jones for extortion. *See* filing 103-4 at 20. Carroll testified that Gettman was insistent that Jones had extorted money from Carroll, despite Carroll repeatedly telling Gettman otherwise. Filing 103-4 at 26, 28. According to Carroll's deposition testimony, Gettman pressured him to make the July 2020 written statement. *See* filing 103-4 at 27. But Carroll also testified that he filled out the statement because he was frustrated with Jones, who had not paid back the money and apparently did not intend to. Filing 103-4 at 32.

According to Carroll's deposition testimony, when Rose followed up on the July statement, Gettman made Carroll feel "coerced to give [Rose] a statement that was not accurate." Filing 103-4 at 28. According to Carroll, when he spoke to Rose, he similarly felt intimidated and coerced by Rose to lie about Jones. Carroll testified, "I felt pressured to give a false statement because I felt they wouldn't accept anything else." Filing 103-4 at 29. Carroll also testified that Rose repeatedly asked if Jones had "coerced" Carroll, until Carroll "eventually broke and said, yes." Filing 103-4 at 30.

When asked how Gettman pressured him, Carroll testified that he felt he could "get out of trouble" if he wrote the statement, but Carroll clarified that Gettman never actually said, or even implied, anything to that effect. *See* filing 103-4 at 38. Carroll testified that Gettman and the NRC were monitoring his

3

money and purchases, and he felt he was being punished for sending money to Jones. Carroll testified that he "felt pressured," because he "felt like" if he wrote the statement, "the punishment would be less." Filing 103-4 at 41. When asked how Rose intimidated him, Carroll testified that he had "a very bad history of dealing with detectives," and he did not trust Rose. Filing 103-4 at 29.

Gettman, however, testified at his deposition that he never talked to Carroll about Jones. *See* filing 103-2 at 13. Gettman testified that he knew Carroll "would send money to do various things," and he encouraged Carroll to spend his own money on himself. Filing 103-2 at 14. Gettman testified that, before this litigation, he was not aware of anything going on between Carroll and Jones, nor was he aware of the criminal case against Jones. Filing 103-2 at 20, 22, 29. Gettman also testified he never helped Carroll complete a witness statement or otherwise get involved in a criminal matter, and he has never met Rose. Filing 103-2 at 24, 25.

## II. DISCUSSION

### 1. MOTION TO RECONSIDER

Jones asks the Court to reconsider its earlier order dismissing his claims against the State of Nebraska, the Nebraska State Patrol, the present defendants in their official capacities, Madison County, the Madison County Sheriff Department, and six unnamed sheriff's deputies Filing 116. He argues the dismissed defendants conspired to deny him of his constitutional rights, and the parties were wrongfully dismissed because "the plaintiff need not show that each participant knew the exact limits of the illegal plan." Filing 116 at 1; filing 57 at 1.

As explained in the earlier memorandum and order, the State is immune

4

from suit, filing 52 at 4; Jones does not raise any factual or legal arguments to the contrary. *See* filing 116 at 1; filing 57 at 1-2. The Court dismissed the claims against the Madison County defendants because the complaint's allegations related to those defendants did not involve "any independent wrongful acts taken by the county or any of its employees." Filing 52 at 5 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rather, Jones's complaint contains only conclusory assertions that the defendants conspired to violate his constitutional rights.

Jones continues to assert, without explanation, that those defendants "conspired and prosecuted him without probable cause." Filing 57 at 1. Jones alleged no facts, either in his complaint or his subsequent filings, supporting an inference that any of the Madison County defendants agreed to any plan with Gettman or Rose, nor has Jones alleged any facts showing those parties had any basis to know or believe that the criminal charges brought against Jones lacked merit or were based on fabricated evidence. The motion to reconsider is denied.

## 2. SUMMARY JUDGMENT

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

5

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are functions for the trier of fact, not those of a judge on a motion for summary judgment. *See id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the trier of fact could conceivably find for the nonmovant. *See Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

The defendants assert they are entitled to judgment as a matter of law because the undisputed facts show that Jones's constitutional rights were not violated. Filing 102 at 3. They argue that Jones's claim for malicious prosecution as to either defendant fails because there existed probable cause supporting the state prosecution, filing 102 at 4, and the conspiracy claim under § 1985 fails because the evidence does not show a "meeting of the minds," filing 102 at 6. Jones argues there are genuine issues of material facts precluding summary judgment, and the defendants are not entitled to qualified immunity. Filing 117 at 1. Neither defendant raises qualified immunity as a basis for summary judgment. *See generally* filing 102.

As stated in the Court's earlier memorandum and order:

> A malicious prosecution claim requires three elements: (1) the suit must have been instituted without probable cause; (2) the motive in instituting the suit was malicious; and (3) the prosecution terminated in the acquittal or discharge of the accused. *Thompson v. Clark*, 596 U.S. 36, 44 (2022). A defendant is liable for malicious prosecution to the extent that defendant's actions "caused the initiation of criminal proceedings despite having no good reason to believe that criminal charges were justified by the facts and the law." *Id.* (internal quotations omitted); *see also Pitt v. Dist. Of Columbia*, 491 F.3d 494, 511 (D.C. Cir. 2007) ("malicious prosecution is actionable under [§ 1983] to the extent that the defendant's actions cause the plaintiff to be unreasonably 'seized' without probable cause, in violation of the Fourth Amendment").

Filing 52 at 8 (footnote omitted).

Additionally, the Eighth Circuit has held a person's constitutional rights are violated if a state actor intentionally or recklessly manufactures false evidence by coercing a witness to falsely implicate someone in a crime. *See Livers v. Schenck*, 700 F.3d 340, 354-55 (8th Cir. 2012) (citing *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002) (en banc)), *abrogated by Manuel v. City of Joliet*, 580 U.S. 357 (2017) *as recognized in Johnson v. McCarver*, 942 F.3d 405, 410-11 (8th Cir. 2019)) (using "reckless investigation" due process standard where law enforcement allegedly coerced witness); *cf. Carnes v. Blehm*, No. 25-1490 (8th Cir. July 7, 2026) (slip op.) (citing *Walz v. Randall*, 2 F.4th 1091, 1104 (8th Cir. 2021)) (discussing "constitutionally inadequate investigation"

7

under "reckless investigation" standard).[2]

The defendants argue that they had probable cause to believe Jones had committed a crime because Carroll "made numerous statements to both Gettman and Sergeant Rose regarding his belief that he was being extorted." Filing 102 at 4. That is supported by the evidence, but Jones has evidence that Carroll *also* made numerous statements that Gettman and Rose "coerced" him to implicate Jones.

To support a claim that a state actor manufactured or fabricated false evidence, a plaintiff must show a state actor deliberately, or at least recklessly,

---

[2] It's unclear whether those constitutional rights arise under the Fourth or the Fourteenth Amendment. While the Eighth Circuit appears to recognize that an alleged reckless investigation implicates a person's Fourteenth Amendment substantive due process rights, *see Walz,* 2 F.4th at 1104, the Eighth Circuit has also unequivocally held that the Supreme Court in *Manuel* abrogated its due process jurisprudence because "any deprivation" of a person's "'liberty before his criminal trial [including arrest without probable cause] . . . is governed by the Fourth Amendment and its prohibition on unreasonable seizures[,]' not the Fourteenth Amendment." *Stockley v. Joyce,* 963 F.3d 809, 821 (8th Cir. 2020) (quoting *Johnson,* 942 F.3d at 410-11) (alterations in original). The cases relied upon in *Walz* predate the purported abrogation, yet the panel recognized a "constitutionally protected interest in 'obtaining fair criminal proceedings before being denied one's liberty[.]'" *See* 2 F.4th at 1104 (quoting *Wilson v. Lawrence Cnty.,* 260 F.3d 946, 956 n.8 (8th Cir. 2001)).

The Court previously dismissed Jones' claims under the Fourteenth Amendment because the theory under which he presented his due process rights was unclear and appeared to be unrelated to his claim that Gettman and Rose manufactured false evidence. *See* filing 52 at 7 n.2; filing 46 at 2. Even assuming that Jones raised a due process claim, or that he could raise one, *see Mader v. United States,* 654 F.3d 794, 800 (8th Cir. 2011) ("when faced with conflicting panel opinions, the earliest opinion must be followed"), that claim fails for the reasons explained herein.

8

coerced a witness to make a false statement to frame a criminal defendant. *See Riddle v. Riepe*, 866 F.3d 943, 947 (8th Cir. 2017); *cf. Williams v. City of Alexander*, 772 F.3d 1307, 1311 (8th Cir. 2014); *Walz*, 2 F.4th at 1104; *Clark v. City of St. Louis*, No. 4:21-cv-788, 2026 WL 412282, at *3 (E.D. Mo. Feb. 13, 2026) (plaintiff can establish Fourth Amendment violation by showing a state actor intentionally or recklessly included false statements in a warrant affidavit). A plaintiff must point to *some* misconduct by a state actor to survive summary judgment. *See Livers*, 700 F.3d at 351-52 (reckless or intentional conduct necessary to establish constitutional violation); *Kingdom Holdings, LLC v. Foss*, No. 5:23-cv-5060, 2024 WL 4266755, at *6 (D.S.D. Sept. 23, 2024) (collecting cases). Jones cannot meet that requirement here.

In the context of coerced confessions, whether a state actor's conduct violates the Constitution depends on the totality of the circumstances. A statement to law enforcement is involuntary if it is "extracted by threats, violence, or express or implied promises sufficient to overbear the [suspect's] will and critically impair his capacity for self-determination." *United States v. Boslau*, 632 F.3d 422, 428 (8th Cir. 2011). Courts consider "the degree of police coercion, the length of the interrogation, its location, its continuity, and the [suspect's] maturity, education, physical condition, and mental condition." *Id.*

While these factors are not *directly* on point for this case, they are instructive as to what sort of tactics might unduly coerce a witness to falsely implicate another person in a crime. Carroll testified that he "felt like" Rose and Gettman pressured him to lie, but the record is absent of any indication that Rose or Gettman did, said, or implied anything that would have wrongfully pressured Carroll. According to Carroll, the interview with Rose lasted, at most, half an hour. *See* filing 103-4 at 29. Neither Gettman nor Rose made any direct or indirect threats or promises, nor did either use violence.

9

*See* filing 103-4 at 25-26, 29. At worst, the defendants are alleged to have repeated the same question to Carroll. Carroll said he thought he could "get out of trouble" or some sort of nonspecific "punishment" with Gettman if he said that Jones defrauded him. Filing 103-4 at 42. And Carroll said he felt "uncomfortable" around Rose because Rose was a law enforcement officer, not because of anything Rose, specifically, did or said. Filing 103-4 at 29.

A witness's speculative assumptions about possible consequences or rewards for lying to law enforcement are not probative of reckless or intentional misconduct. That a witness "felt" coerced or pressured is not sufficient evidence from which a reasonable juror could find that a state actor manufactured false evidence. While Carroll, a patient at the NRC, may more easily have his "capacity for self-determination" overborne, there is simply nothing in the record to support a finding that Gettman or Rose intentionally or recklessly coerced Carroll to give an involuntary, false statement about Jones.

No reasonable juror could conclude that Carroll's statements to Gettman or Rose were anything but voluntary. There is no evidence supporting a finding that Gettman or Rose acted deliberately or recklessly to falsely implicate Jones in a crime. Rose completed his investigation by interviewing Jones's sister and confirming that Carroll sent her $5,000, after Carroll told him that Jones extorted him. Objectively and subjectively, both Rose and Gettman had probable cause to believe Jones had extorted Carroll.

Because there is no indication that Jones's constitutional rights were violated, Jones cannot prevail on his malicious prosecution claim under § 1983, nor his § 1985 conspiracy claim. The defendants are entitled to summary judgment. Accordingly,

10

IT IS ORDERED:

1.    Jones's second motion for reconsideration (filing 116) is denied.

2.    The defendants' motion for summary judgment (filing 101) is granted.

3.    Jones's claims are dismissed.

4.    A separate judgment will be entered.

Dated this 8th day of July, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

11